IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JAMES W. MOSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 314-071 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

James W. Mosley appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.  **BACKGROUND**

Plaintiff protectively applied for SSI on January 11, 2011, alleging a disability onset date of March 23, 2007, but that onset date was amended to November 11, 2010, prior to Plaintiff's hearing before the Administrative Law Judge ("ALJ"). Tr. ("R."), pp. 10, 135-40, 175. Consistent with Social Security regulations and as determined by the ALJ, the operative date

is the application date, January 11, 2011. See 20 C.F.R. §§ 416.330 & 416.335. The Social Security Administration denied Plaintiff's application initially, R. 55-56, 76-78, and on reconsideration, R. 57-68, 79-83. Plaintiff requested a hearing before an ALJ, R. 85-87, and the ALJ held a video hearing on March 6, 2013. R. 29-54.

Plaintiff was fifty-one years old on the SSI application date and was fifty-three years old at the time the ALJ issued the decision currently under consideration by the Court. R. 23, 135. Plaintiff dropped out of high school in tenth or eleventh grade and recalls that he took a combination of regular and special education classes. R. 36, 182. Plaintiff states that he cannot read, and he has limited mathematical abilities. R. 15, 36-37. Plaintiff applied for disability benefits based on high blood pressure, heart disease, rheumatoid arthritis, vision problems, and emotional problems. R. 22, 181. Plaintiff does not have any qualifying past relevant work as defined in the social security regulations, R. 22, 38, but he did report some prior work as a laborer that produced a highest yearly income in 1996 of $3,523.50. R. 145, 182.

Prior to the hearing, Plaintiff's counsel submitted "correspondence as a pre-hearing brief outlining [Plaintiff's] contentions on his disability status." R. 255. In that briefing, counsel argued that Plaintiff's "psychological and educational restrictions, in combination with the physical impairment, would likely rise to the level of a listing case under the 12.05C listing." R. 256. Counsel pointed out the findings of William F. McDaniel, Ph.D., who performed a consultative examination on Plaintiff and determined that his testing scores suggested "neurocognitive impairment" and ranked his reading abilities in the 0.5 percentile and math ability in the 0.1 percentile. Id. (citing R. 272-75). Counsel argued that the "evidence of low average general intelligence with neurocognitive impairment" suggests that IQ testing would

2

likely yield a low enough score to warrant application of the 12.05C listing. Id. However, because Dr. McDaniel did not conduct IQ testing, Plaintiff "would specifically request that an order issue for a repeat psychological consultative exam with specific direction to perform IQ testing in order to fully develop the file on this issue." Id.

At the hearing, the ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Kenneth L. Bennett, a Vocational Expert. Id. The ALJ acknowledged and admitted as part of the record, the correspondence brief from counsel which raised the issue of applying Listing 12.05C and requesting an IQ test. R. 33. Counsel also explicitly reiterated the request for a repeat consultative examination to include IQ testing, to which the ALJ replied, "All right. I will take that under advisement." R. 53. On April 4, 2013, the ALJ issued an unfavorable decision, which makes no mention of Listing 12.05C and does not address the multiple requests for IQ testing. R. 7-28.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 11, 2011, the application date (20 C.F.R. § 416.971 *et seq*.).

2. The claimant has the following severe impairments: gout, coronary artery disease, and depressive disorder (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c)[1] with some limitations.

---

[1]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

3

> Posturally, the claimant is capable of frequent stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, or scaffolds. However, the claimant must avoid all climbing of ropes. Environmentally, the claimant must avoid concentrated exposure to cold, heat, and humidity. Due to concentration, persistence, or pace deficits, the claimant is limited to no written instructions, no complex verbal instructions, and work requiring only simple, routine, and repetitive tasks. Similarly, the clamant is limited to only simple, work related decisions requiring only few, if any work place changes, but with no social deficits. The claimant has no past relevant work. (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)), including linen room attendant, dining room attendant, and cleaner. Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since January 11, 2011, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 12-23.

When the Appeals Council denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred by not granting the request for IQ testing, which resulted in a decision based on a record that was not fully and fairly developed. See doc. no. 11 ("Pl.'s Br."); doc. no. 15 ("Pl.'s Reply Br."). The Commissioner maintains that the ALJ was not required to order another consultative examination because the record was sufficiently developed without IQ scores to allow the ALJ to make an informed decision. See doc. no. 12 ("Comm'r's Br.").

## II. DISCUSSION

### A. Standard of Review.

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### B. The ALJ's Basic Obligation to Develop Full and Fair Record.

A claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Larry v. Commissioner of Soc. Sec., 506 F. App'x 967, 969 (11th Cir. 2013) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to obtain additional information by ordering a consultative examination unless the record establishes that such an examination is necessary to enable an ALJ to render an informed decision. Ingram v. Commissioner of Soc. Sec. Admin, 496 F.3d 1253, 1269 (11th Cir. 2007); Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). The regulations also provide that the ALJ may order a consultative examination when warranted. See 20 C.F.R. § 416.917. "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted).

6

## C. The ALJ Erred by Ignoring Plaintiff's Request for Additional IQ Testing and Failing to Determine Whether Listing 12.05C Applied.

Plaintiff argues the ALJ failed to fully develop the record by refusing Plaintiff's request for a consultative examination with IQ testing. See generally Pl.'s Br. Plaintiff maintains that without such a consultative examination, the ALJ did not have sufficient information to make an informed decision regarding the nature and extent of Plaintiff's alleged intellectual limitations. Pl.'s Reply Br., p. 2. The Commissioner counters no consultative examination was needed because Plaintiff "can only speculate that another consultative psychological examination with intelligence testing would result in IQ scores or produce other evidence that might show his impairments met or equaled Listing 12.05, and speculation is not a basis for requiring an ALJ to order a consultative examination." Comm'r's Br., p. 4.

### 1. The Requirements of Listing 12.05C.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson

7

v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00A (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Commissioner, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05C states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Thus, a claimant generally meets the Listing 12.05C criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). To satisfy the additional impairment prong of Listing 12.05C, Plaintiff needs to show that the impairment "significantly limits his physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined

8

in §§ 404.1520(c) and 416.920(c)." Willard v. Colvin, No. 5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing 12.00A). The applicable regulations also provide, "Standardized intelligence test results are *essential* to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00D(6)(b) (emphasis added).

### 2. Without IQ Scores, There Is a Significant Evidentiary Gap that Prevented the ALJ from Making an Informed Decision.

Although raised in pre-hearing briefing and again at the hearing with the ALJ, there is absolutely no mention of Listing 12.05C, let alone the request for IQ testing, in the ALJ's written opinion. The Commissioner ignores this evidentiary gap and conducts her own post-hoc review of the record to explain why the record does not support a finding that Plaintiff met or equaled Listing 12.05C. This argument fails for two reasons.

First, the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"). Second, and more importantly here, the record, even as the Commissioner now tries to review it, is incomplete. Plaintiff specifically raised the issue of Listing 12.05C in his pre-hearing briefing and specifically asked in that briefing and at the hearing for further development of the record in the form of an order for IQ testing. The ALJ agreed to take the request under consideration, R. 53, and then never mentioned Listing 12.05C again.

9

Nor is the request for IQ testing baseless. Plaintiff testified that he dropped out of school in tenth grade and may have taken some special education classes. R. 36. Plaintiff also testified that he cannot read and has limited mathematical abilities. R. 36-37. The examination by consultative examiner William McDaniel, Ph.D., confirmed that, despite Plaintiff's best efforts which produced valid testing results, Plaintiff's reading skills scored in the 0.5 percentile, and his math computation skills scored in the 0.1 percentile. R. 273-74. Dr. McDaniel had to read to Plaintiff certain portions of the testing performed because of his low level of reading. R. 274. Dr. McDaniel opined that Plaintiff "performs in the range of mild neurocognitive impairment" that may "reflect premorbid intellectual impairment" and could likely not handle his finances independently. Id. This is not a case where there is no objective evidence suggesting Plaintiff *may* suffer from some type of intellectual impairment. Cf. Parker v. Colvin, CV 213-137, 2014 WL 2855047, at *4 (S.D. Ga. June 23, 2014) (Wood, C.J.) (finding no error in failing to appoint psychiatrist or psychologist or order consultative examination when claimant offered no objective evidence suggesting mental or emotional impairment).

As Plaintiff succinctly summarizes, "[T]he absence of any such diagnosis [of intellectual disability] is simply a red herring because the testing results were not present that are required for the determination of the presence of [intellectual disability] in the first place."[2] Pl.'s Reply Br., p. 5. When an ALJ fails to make an express factual finding about the severity of an alleged mental impairment and fails to specify his reasons for denying a claimant's request for additional testing to complete the record, he fails to fulfill his duty to fully and fairly develop the record. See Ford v. Secretary of Health and Human Servs., 659 F.2d 66, 69 (Former 5th Cir. Unit B

---

[2]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (codified at 20 C.F.R. Parts 404 and 416).

1981); see also Rease v. Barnhart, 422 F. Supp.2d 1334, 1372-73 (N.D. Ga. 2006) (remanding because record was "devoid of any evidence that the ALJ acknowledged or responded to the claimant's requests" for second hearing on updated expert opinions or to subpoena additional medical records). Moreover, Social Security regulations state that standardized intelligence test results are *essential* when deciding intellectual disability not involving mental incapacity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00D(6)(b) (emphasis added). Here, the ALJ failed to acknowledge the existence of a 12.05C issue, let alone make an express factual finding or specify his reasons for denying the request for additional IQ testing. Thus, the decision is not supported by substantial evidence, and this case must be remanded for proper consideration. See Ford, 659 F.2d at 69; Reeves, 734 F.2d at 522 n.1.

The Commissioner makes several compelling arguments why Plaintiff does not meet or equal Listing 12.05C. Comm'r's Br., pp. 7-10. Without the essential IQ testing that was twice requested by Plaintiff, no informed decision on Plaintiff's SSI application can be made. If there is a reason(s) why the requested IQ testing is not necessary and/or reason(s) why the 12.05C claim raised by Plaintiff is not valid, then upon remand, the administrative decision must explain why. As the record stands now, however, there is an obvious evidentiary gap, and the Court finds the ALJ failed to develop a full and fair record.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and

that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 9th day of September, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA